IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUTO EQUITY LOANS OF DELAWARE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-1470 (MN) |
| JOSH SHAPIRO, in His Official Capacity as Attorney General of the Commonwealth of Pennsylvania, | ) ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION</u>

Douglas D. Herrmann, PEPPER HAMILTON LLP, Wilmington, DE; Richard J. Zack, Alexander L. Harris, Brian M. Nichilo, PEPPER HAMILTON LLP, Philadelphia, PA – Attorneys for Plaintiff

Jessica S. Davis, Senior Deputy Attorney General, Keli M. Neary, Chief Deputy Attorney General, OFFICE OF ATTORNEY GENERAL, Harrisburg, PA – Attorneys for Defendant

September 3, 2019
Wilmington, Delaware

*Maryellen Noreika*

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6) or for a Transfer Pursuant to 28 U.S.C. § 1404(a) filed by Defendant Josh Shapiro, in His Official Capacity as Attorney General of the Commonwealth of Pennsylvania ("Defendant"). (D.I. 10). Defendant seeks dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, challenging this Court's ability to exercise personal jurisdiction over him. (D.I. 11 at 5). In the alternative, Defendant seeks dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that this case is not yet ripe.[1] (*Id.* at 11-12; *see also* D.I. 14 at 7). In the event that the Court has jurisdiction over the case and Defendant, Defendant seeks to transfer this case to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). (D.I. 11 at 15). Plaintiff Auto Equity Loans of Delaware, LLC ("Plaintiff") opposes Defendant's motion. (D.I. 13). For the reasons set forth below, the Court grants-in-part and denies-in-part Defendant's motion.[2]

---

[1]    In Defendant's motion and accompanying opening brief, Defendant moves to dismiss under a variety of subsections of Rule 12 (*see* D.I. 10; D.I. 11 at 1), but does not identify Rule 12(b)(1) as one of them. Defendant, however, challenges the ripeness of Plaintiff's claim. (D.I. 11 at 11). A ripeness challenge is a challenge to a court's subject matter jurisdiction. *See Wayne Land & Mineral Grp. LLC v. Del. River. Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018). A challenge to subject matter jurisdiction is appropriately brought under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1) (permitting a party to assert the defense of "lack of subject-matter jurisdiction" by motion under Rule 12). Thus, the Court will treat Defendant's ripeness challenge as a motion made under Rule 12(b)(1).

[2]    As noted above, Defendant seeks dismissal under Rule 12(b)(2) because he challenges the Court's ability to exercise personal jurisdiction over him. (D.I. 11 at 5). District courts, however, have the power to transfer cases under 28 U.S.C. § 1404(a) regardless of their ability to exercise personal jurisdiction over a defendant. *See U.S. v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) (holding that a district court may transfer a case under 28 U.S.C. § 1404(a) even if it cannot exercise personal jurisdiction over the defendant). As will be discussed below, the convenience of the parties weighs in favor of transferring this case to the Middle District of Pennsylvania. Thus, the portion of Defendant's motion directed to dismissal under Rule 12(b)(2) is denied as moot. *See Applied Predictive Techs., Inc. v.*

1

## I.    <u>BACKGROUND</u>

Plaintiff initiated this action on September 24, 2018, seeking declaratory and injunctive relief. (D.I. 1; *see also* D.I. 9). Plaintiff is a limited liability company organized under Delaware law. (D.I. 9 ¶ 12). Plaintiff "provides financing to borrowers secured by motor vehicle titles." (*Id.*). Plaintiff's "loan transactions are completed at [its] offices, the majority of which are located in Delaware." (*Id.*) Plaintiff has no offices in Pennsylvania and allegedly "does not operate in Pennsylvania." (*Id.* ¶ 3). Plaintiff alleges that "[i]ts limited contacts with Pennsylvania occur for reasons that are entirely outside of [Plaintiff's] control . . . or that are incidental to [Plaintiff's] general marketing efforts or to loan agreements that were executed outside Pennsylvania and governed by the law of Delaware . . . ." (*Id.*). Defendant is the Attorney General of Pennsylvania and is the state's chief legal and law enforcement officer. (*Id.* ¶ 13). As Pennsylvania's Attorney General, Defendant "is responsible for and administers laws and regulations established pursuant to Pennsylvania legislation." (*Id.*).

In June of 2018, Plaintiff alleges that an agent from Defendant's office contacted it, noting that Defendant's office had received a complaint from a Pennsylvania resident "regarding the interest rate set forth in the [resident's] loan agreement with [Plaintiff]." (*Id.* ¶ 31). Through its counsel, Plaintiff responded to Defendant's office and explained that "the entire transaction with the borrower had taken place in an [] office [of Plaintiff's] in Delaware, and the loan agreement entered into between that borrower and [Plaintiff] was governed by and in compliance with Delaware law." (*Id.* ¶ 32). On August 7, 2018, Plaintiff received a letter from Defendant's office, in which Defendant explained "that Pennsylvania's limits on interest rates apply to vehicle title

---

*MarketDial, Inc.*, No. 18-963 (CFC), 2019 WL 2745724, at *5 (D. Del. July 1, 2019) (denying defendants' motion to dismiss for lack of personal jurisdiction as moot because the court granted defendants' motion to transfer).

loans extended to Pennsylvania residents, even if the loan is originated by a lender outside the Commonwealth of Pennsylvania." (*Id.* ¶ 5 (quoting *id.*, Ex. A) (quotation marks omitted)). On August 15, 2018, Defendant's office sent Plaintiff a request for documents, "asking for more than two years' worth of records addressing thirteen categories of information as part of its investigation into [Plaintiff's] operations." (*Id.* ¶ 6 (citing *id.*, Ex. B)).

In light of Defendant's request for documents and the initiation of an investigation against Plaintiff, Plaintiff now seeks declaratory and injunctive relief, alleging that Defendant's "threatened extraterritorial imposition of Pennsylvania laws on [Plaintiff] violates the Commerce Clause and Due Process Clause." (*Id.* ¶ 10). Plaintiff alleges that the Commerce Clause bars Defendant "from applying, or attempting to apply," Pennsylvania laws "to entities, like [Plaintiff] that operate 'wholly outside' of Pennsylvania." (*Id.* ¶ 42). Moreover, Plaintiff alleges that "the Due Process Clause prevents [Defendant] from enforcing" various Pennsylvania laws "against entities, like [Plaintiff] that do not have sufficient 'minimum contacts' with Pennsylvania." (*Id.* ¶ 43). Plaintiff contends that an injunction is warranted here because it is "suffering irreparable harm in light of [Defendant's] actions and the costs incurred because of such actions" and it will continue to suffer harm "because of the impairment of its business during [Defendant's] unconstitutional attempt to investigate purported violations of Pennsylvania law." (*Id.* ¶ 45). Plaintiff also seeks a declaratory judgment that Defendant "has no authority to enforce" any laws or regulations that Defendant "is empowered to administer and enforce, because exterritorial enforcement of those laws on [Plaintiff] would violate the Commerce Clause and Due Process Clause." (*Id.* ¶ 47).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Pursuant to Rule 12(b)(1)

A court must grant a motion to dismiss pursuant to Rule 12(b)(1) if it lacks subject matter jurisdiction to hear a claim.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  A court's jurisdiction "extends only to claims that are ripe for resolution."  *Wayne*, 894 F.3d at 522.  In considering whether an action is ripe for adjudication, courts consider three elements: "(1) the adversity of the parties' interests; (2) the probable conclusiveness of a judgment; and (3) the practical utility of judgment to the parties."  *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 352-53 (D. Del. 2009) (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)).  All three elements must be satisfied for an action to be considered ripe.  *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

To establish adversity of interest, "[a]lthough the party seeking review need not have suffered a 'completed harm' . . ., it is necessary that there be a substantial threat of real harm and that the threat 'must remain real and immediate throughout the course of the litigation.'" *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (internal quotation marks and citations omitted).  In reviewing the conclusiveness factor, courts consider "whether a declaratory judgment definitively would decide the parties' rights."  *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001).  Courts may also consider "the extent to which further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominately legal." *Id.*  In evaluating the final factor, the utility of a judgment, courts consider "whether the parties' plans of actions are likely to be affected by a declaratory judgment . . . and consider[] the hardship

to the parties of withholding judgment." *Id.* at 344-45 (internal quotation marks and citations omitted).

"Courts have considered a challenge to the ripeness of a claim to be a facial challenge to subject matter jurisdiction."[3] *Evanston Ins.*, 635 F. Supp. 2d at 352 (citing *Thompson v. Borough of Munhall*, 44 F. App'x 582, 583 (3d Cir. 2002) and *Corporate Aviation Concepts Inc. v. Multi-Service Aviation Corp.*, No. 03-3020, 2005 WL 1693931, at *2 n.6 (E.D. Pa. July 19, 2005)). A court, in reviewing a facial challenge under Rule 12(b)(1), considers the pleadings as it would under Rule 12(b)(6). *Id.* "In this regard, the Court must accept all factual allegations in the complaint as true and [] all reasonable inference[s] must be drawn in favor of the plaintiff." *Id.* (citing *NE Hub*, 239 F.3d at 341). Thus, "[t]he Court's inquiry under Rule 12(b)(1) is limited to the allegations in the complaint, the documents referenced in or attached to the complaint, and matters of the public record." *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

**B.** **Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)**

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses," *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

---

[3]     Defendant also concedes that "his Motion to Dismiss may be deemed a 'facial challenge' to [Plaintiff's] Complaint." (D.I. 14 at 7).

The Third Circuit has recognized that:

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted).  The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a)."  *Id.*  The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted).  The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  Moreover, though courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," *Jumara*, 55 F.3d at 883, the Third Circuit has held that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail."  *Shutte*, 431 F.2d at 25.

III.    <u>**ANALYSIS**</u>

Defendant argues that the Court should dismiss Plaintiff's Amended Complaint because the Court has neither personal jurisdiction over Defendant nor subject matter jurisdiction over Plaintiff's claims. (D.I. 11 at 5, 11-12). In the alternative, Defendant asks the Court to transfer this case to the Middle District of Pennsylvania. (*Id.* at 15). As discussed below, the Court finds that it has subject matter jurisdiction over Plaintiff's claims, and that because the convenience of the parties weighs in favor of transfer, the Court will refrain from determining whether it may exercise personal jurisdiction over Defendant and, instead, will transfer this case to the Middle District of Pennsylvania.

A.      <u>**The Court Has Subject Matter Jurisdiction Over Plaintiff's Claims**</u>

As stated above, a court's jurisdiction "extends only to claims that are ripe for resolution." *Wayne*, 894 F.3d at 522. For a claim to be ripe for adjudication, three elements must be met: (1) the parties' interests must be adverse; (2) the judgment must be conclusive; and (3) the judgment must have practical utility. *Travelers*, 72 F.3d at 1154. Here, Defendant contends that Plaintiff's claims are not yet ripe, because Defendant has not asked Plaintiff formally to comply with his office's investigation, and thus Plaintiff has not suffered any harm. (D.I. 11 at 13). Moreover, Defendant asserts that the conclusiveness and utility elements have not been met, arguing that "any judgment from this Court against [Defendant] would lack conclusiveness and utility until an investigation is actually completed and an enforcement action is filed and [Plaintiff] can factually support that [Defendant] is actually trying to enforce Pennsylvania consumer protection law in Delaware." (*Id.* at 14). In response, Plaintiff contends that its claims are ripe, arguing that it is "challenging the authority of [Defendant] to investigate and regulate Delaware-

based business activities," rather than challenging the "scope and intensity of" Defendant's investigation. (D.I. 13 at 14 (internal quotation marks omitted)).

As an initial matter, the Court notes that the parties disagree on the framing of Plaintiff's claims. This disagreement is apparent from each party's choice of citations to *Marathon Petroleum Corp. v. Secretary of Finance for Delaware*, 876 F.3d 481 (3d Cir. 2017) to support its respective position. (*Compare* D.I. 11 at 13-14 *with* D.I. 13 at 13-14). In *Marathon Petroleum*, the Third Circuit, in reviewing the plaintiffs' challenge to Delaware's escheated property laws, acknowledged that, "[r]ead one way, [Plaintiffs'] claim is not ripe; read another way, it is ripe . . . ." 876 F.3d at 496. Specifically, the Third Circuit determined that "to the extent [Plaintiffs] question the scope and intensity of Delaware's audit, that claim is not ripe at this time." *Id.* But "to the extent [Plaintiffs] argue that Delaware cannot even conduct an audit," the Third Circuit determined that it was "a ripe but meritless claim." *Id.* Unsurprisingly, Defendant contends that Plaintiff's claims are "almost identical" to the first situation described in *Marathon Petroleum* (*see* D.I. 11 at 13), whereas Plaintiff asserts its claims "are more analogous" to the second situation (*see* D.I. 13 at 14).

As in *Marathon Petroleum*, the Court observes that Plaintiff's claims can be fairly framed in two ways, leading this Court to the same determinations made by the Third Circuit. *See* 876 F.3d at 496-99. If Plaintiff's claims are framed as challenging the "scope and intensity" of Defendant's investigation, Plaintiff's claims are not yet ripe. *See* 876 F.3d at 496-98. As Defendant notes, his office has not made any formal demands that Plaintiff comply with the request for documents or overall investigation. (*See* D.I. 11 at 13). Thus, Plaintiff is not in a "place where [it] must choose between submitting to the [investigation] or facing penalties." *See Marathon Petroleum*, 876 F.3d at 497 (quotation marks and citation omitted). Moreover, even if Defendant

"makes a formal demand for documents, the costs of administrative investigations are usually not sufficient, however substantial, to justify review in a case that would otherwise be unripe." *Id.* (internal quotation marks and citation omitted). Thus, to the extent Plaintiff's claims are meant to challenge the scope of Defendant's investigation, its claims are not yet ripe. As the Third Circuit noted in *Marathon Petroleum*, "at this junction, [Plaintiff] [is] effectively in control: [it] can simply refuse to cooperate." 876 F.3d at 497.

But if Plaintiff's claims are framed as challenging Defendant's authority even to investigate Plaintiff,[4] Plaintiff's claims are ripe. *See Marathon Petroleum*, 876 F.3d at 498-99. As referenced above, three elements must be met for Plaintiff's claims to be considered ripe: (1) the parties' interests must be adverse; (2) the judgment must be conclusive; and (3) the judgment must have practical utility. *Travelers*, 72 F.3d at 1154. As discussed below, the Court finds that all three elements are satisfied here.

### 1.    Adversity of interests

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers*, 72 F.3d at 1154. In considering this factor, courts have found parties' interests to be adverse when the injured party objects to the process itself, such as Plaintiff's

---

[4]     As noted above, in reviewing a facial challenge under Rule 12(b)(1), the Court "must accept all factual allegations in the complaint as true and [] all reasonable inference[s] must be drawn in favor of the plaintiff." *Evanston Ins.*, 635 F. Supp. 2d at 352. Here, accepting all factual allegations as true and drawing all inferences in Plaintiff's favor, the Court finds sufficient support in the Amended Complaint to frame Plaintiff's claims as challenging Defendant's authority to investigate Plaintiff. For example, in its claims for relief, Plaintiff alleges that the Commerce Clause "prohibits [Defendant] from . . . *attempting* to apply" Pennsylvania law (D.I. 9 ¶ 42 (emphasis added)) and that it will continue to suffer harm as a result of Defendant's "unconstitutional attempt to investigate purported violations of Pennsylvania law" (*id.* ¶ 45). Moreover, Plaintiff makes several allegations regarding its attempts to inform Defendant's office that it lacked authority to investigate Plaintiff. (*Id.* ¶¶ 4, 33).

objection to Defendant's investigation. *See, e.g.*, *Marathon Petroleum*, 876 F.3d at 499 ("When the claimed injury 'is the process itself,' . . . in the manner it is here, then the interests of the parties are clearly adverse." (internal citation omitted)); *NE Hub*, 239 F.3d at 342 ("In fact, the process itself may give rise to adversity so that an action challenging the process is ripe even before the process concludes.").

Moreover, courts have found adversity to exist even when no enforcement action has been filed. *See Presbytery of N.J.*, 40 F.3d at 1468 (finding an action was ripe, even though no enforcement action had been filed, given that the state refused "to waive prosecution" of a pastor if he violated an anti-discrimination law in his personal capacity). Therefore, although Defendant has not demanded that Plaintiff formally comply with his office's investigation, nor has Defendant determined whether an enforcement action will ultimately be filed against Plaintiff, the parties' interests may still be deemed adverse, because Plaintiff challenges the investigation itself and Defendant has not stated that it will not continue its investigation of Plaintiff. *See id.* ("[I]n light of the state's refusal to waive prosecution against [the pastor] when he acts outside of his institutional capacity as a pastor of the OPC, we conclude the threat of prosecution is 'real and substantial.'"); *see also NE Hub*, 239 F.3d at 343-44 (finding the parties' interests to be adverse where plaintiff objected to the state's review process and the state had "not disclaimed a right" to continue with the review process).

Additionally, Defendant concedes that his interests are adverse to Plaintiff's. (D.I. 11 at 14 ("[W]hile the parties may be deemed to have adverse interests in that [Plaintiff] intends to issue loans at rates that are illegal in Pennsylvania and [Defendant] seeks to protect Pennsylvania from

being subject to usury loan practices . . . .")). Thus, the Court is satisfied that the adversity requirement is met here.[5]

### 2. Conclusiveness

The conclusiveness element considers "whether a declaratory judgment action definitively would decide the parties' rights." *NE Hub*, 239 F.3d at 344. "[P]redominantly legal questions are generally amendable to a conclusive determination in a preenforcement context." *Presbytery of N.J.*, 40 F.3d at 1468. Plaintiff contends that its claims "raise predominantly legal questions that this Court can answer decisively without the need for much, if any, further factual development." (D.I. 13 at 14). The Court agrees with Plaintiff. As set forth in the Amended Complaint, Plaintiff allegedly does not operate in Pennsylvania and any interactions with Pennsylvania residents would not have occurred in that state. (*See* D.I. 9 ¶¶ 3, 12). Thus, extensive factual development is not needed to determine whether Defendant, as the Attorney General of Pennsylvania, has the authority to investigate Plaintiff, as an out-of-state business entity with no operations in Pennsylvania. Moreover, any judgment on that issue would be "conclusive," because if Defendant "is not entitled to even ask [Plaintiff] for information, then the [investigation] is effectively at an end." *Marathon Petroleum*, 876 F.3d at 499.

### 3. Utility

Finally, the "judgment must have utility" and "be of some practical help to the parties." *Travelers*, 72 F.3d at 1155. Courts consider "whether the parties' plans of actions are likely to be

---

[5] The Court acknowledges Defendant's assertion that Plaintiff's "rationale is [] flawed in that it challenges [Defendant's] authority to investigate a Delaware based business," given that there is allegedly "no proscription on the Attorney General's authority to investigate (within Pennsylvania) the conduct of a business that affects citizens of the Commonwealth . . . ." (D.I. 14 at 8-9). The Court, however, finds that Defendant's assertion goes to the merits of Plaintiff's claims, rather than whether the parties' interests are adverse.

affected by a declaratory judgment." *Presbytery of N.J.*, 40 F.3d at 1469 (quoting *Step-Saver*, 912 F.2d at 649 n.9) (quotation marks omitted). Here, a judgment on the issue of whether Defendant may investigate out-of-state business entities with no operations in Pennsylvania would be of practical help to the parties and would affect their future actions. For Defendant, judgment would alter its future actions, as it would not be able to investigate Plaintiff or another out-of-state business entity with no operations in Pennsylvania. *See Presbytery of N.J.*, 40 F.3d at 1470 (finding that the "state's effort to enforce certain portions of [the relevant statute] [would] be affected by the resolution of th[e] litigation"). As for Plaintiff, a judgment would be of practical help because it may alter how Plaintiff does business with Pennsylvania residents if the Attorney General of Pennsylvania can investigate its lending practices. *See id.* (noting that judgment relating to an anti-discrimination statute would permit the plaintiff "and all others who seek to engage in similar activity . . . to speak without fear of governmental sanction or regulation of their activities protected by the statute").

Thus, the Court is satisfied that all three elements have been met, establishing subject matter jurisdiction over Plaintiff's challenge to Defendant's authority to investigate it.[6] Given that the Court has subject matter jurisdiction, the Court will now turn to whether this case should be transferred to Middle District of Pennsylvania.

**B.      The Convenience of the Parties Weighs In Favor of Transferring This Case to the Middle District of Pennsylvania**

As an initial matter, because Defendant resides in the Middle District of Pennsylvania (*see* D.I. 11 at 17), this action could have originally been brought in that district. *See* 28 U.S.C.

---

[6]      To be clear, the Court is not making a judgment on whether Plaintiff's claims ultimately have merit. The Court's ruling is limited to the issue of whether Plaintiff's claims are ripe.

§ 1391(b)(1).  Thus, the only issue left before the Court is whether to exercise discretion under § 1404(a) to transfer the case to the Middle District.

### 1.  Plaintiff's forum preference

This factor weighs against transfer.  "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," – one that "should not be lightly disturbed."  *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted).  "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer."  *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

The parties agree that this factor weighs against transfer but disagree on how much weight it should be afforded.  (*See* D.I. 11 at 16; D.I. 13 at 16).  Defendant asserts that "Plaintiff's choice of venue is entitled to 'substantial weight,' [but] that [the] factor is certainly not dispositive." (D.I. 11 at 16).  In response, Plaintiff contends that a plaintiff's forum preference should be given "paramount consideration."  (D.I. 13 at 16 (quoting *Shutte*, 431 F.2d at 25)).  The Court will afford Plaintiff's forum preference paramount consideration.  The Court acknowledges that Defendant challenges the Court's ability to exercise personal jurisdiction over him and that lack of personal jurisdiction over a defendant may result in a court affording less weight to a plaintiff's forum preference.  *See ANI Pharm., Inc. v. Method Pharm., LLC*, No. 17-1097 (MN), 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (finding that plaintiff's forum preference did not weigh against transfer because the court could not exercise personal jurisdiction over both defendants).  But given that the Court has not determined whether it may exercise personal jurisdiction over Defendant

and awarding Plaintiff's forum preference paramount consideration will not change the outcome of the balancing of the *Jumara* factors, Plaintiff's choice is afforded paramount consideration.

### 2. Defendant's forum preference

This factor favors transfer. Defendant's interest in having this case transferred to the Middle District of Pennsylvania is clear.

### 3. Whether the claims arose elsewhere

This factor favors transfer. Defendant contends that this factor weighs in favor of transfer because "[t]he alleged activities (sending communications to [Plaintiff's] counsel) were initiated by [Defendant's] agents in the Middle District." (D.I. 11 at 16). Moreover, "the investigation that [Plaintiff] challenges, did not occur in Delaware – it was commenced in Pennsylvania for loans issued to Pennsylvania residents for vehicles titled in the Commonwealth." (D.I. 14 at 9-10). Plaintiff contends that the claims arose in Delaware, because "it is [Defendant's] attempt to interfere with [Plaintiff's] Delaware activities that gave rise to this suit, not any events in Pennsylvania." (D.I. 13 at 17).

The Court agrees with Defendant. Plaintiff's claims arise out of its claim that Defendant, as the Attorney General of Pennsylvania, may not investigate Plaintiff's business practices. (*Id.* at 14 ("Specifically, [Plaintiff's] claims are 'challenging the authority' of the Attorney General to investigate and regulate Delaware-based business activities, and therefore, consistent with *Marathon*, such claims are ripe.")). All of the actions related to Defendant's investigation have occurred in Pennsylvania: (1) the original complaint received by Defendant from a Pennsylvania resident, (2) the investigation opened by Defendant's office, and (3) the correspondence sent from Defendant's office to Plaintiff's counsel. Thus, this factor weighs in favor of transfer.

4.    Convenience of the parties as indicated by their relative physical and financial condition

This factor is neutral. Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).

Neither party expressly addresses this factor in the papers. Instead, the parties include this factor under their overall argument that the private interest factors, except for the opposing party's choice of forum, either weigh in favor of their respective positions or are neutral. (*See* D.I. 11 at 16; D.I. 13 at 17). Regarding Defendant, the Court assumes that the Middle District of Pennsylvania is more convenient for him, given that he resides within that district and one of his office's headquarters is located there. (*See* D.I. 11 at 16-17). As for Plaintiff, its decision to file in Delaware "signals its belief that litigation here is most convenient for it, for whatever its reasons." *Tessera, Inc. v. Sony Elecs. Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012). Given the lack of information, however, regarding each party's size or ability to bear the costs of litigating in Delaware versus the Middle District of Pennsylvania, this factor is neutral.

5.    Convenience of the witnesses

This factor favors transfer. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies

only insofar as "a witness actually will refuse to testify absent a subpoena")). Moreover, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses[] who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

Defendant asserts that this factor weighs in favor of transfer because "any potential witnesses [] either reside in the Middle District or be within a reasonable distance of one or more Offices maintained by the Attorney General as well as the two locations of the Courthouse [in the Middle District]." (D.I. 11 at 16). Defendant "maintains offices in Harrisburg, Lemoyne, Philadelphia, and Pittsburgh to accommodate witnesses." (*Id.* at 16 n.8). In response, Plaintiff contends that "it is unlikely that witnesses . . . would be unavailable for trial . . . in either court[,]" given that Pennsylvania and Delaware are neighboring states. (D.I. 13 at 17). Although Defendant does not name any specific third-party witnesses in Pennsylvania, neither party identifies even the possibility of third-party witnesses located in Delaware. Thus, under the facts presented here, this factor weighs in favor of transfer, albeit only slightly.

### 6. Location of books and records

*Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." 55 F.3d at 879. Both parties acknowledge that they do not foresee any issues with necessary documents being made available in either Pennsylvania or Delaware. *See* D.I. 11 at 16-17; D.I. 13 at 17. Thus, this factor is neutral.

7. <u>Enforceability of the judgment</u>

This factor weighs in favor of transfer. Defendant contends "because this action is against the Attorney General (as the Chief Law Enforcement Office of Pennsylvania), it follows that for a judgment to be binding upon his office and his agents, it must be rendered by a court sitting in Pennsylvania." (D.I. 11 at 17). Plaintiff, in response, asserts that this factor is neutral, given "the proximity of the two courts." (D.I. 13 at 17). Plaintiff has not explained how the "proximity of the two courts" relates to the enforceability of a judgment against Defendant and his office, and the Court finds this factor to weigh in favor of transfer.

8. <u>Practical considerations</u>

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Defendant contends that this factor weighs in favor of transfer because Defendant resides in the Middle District of Pennsylvania, potential witnesses reside either in the Middle District or are within reasonable travel distance, and Plaintiff's counsel has an office there. (D.I. 11 at 17). Plaintiff, for its part, asserts that this factor is neutral. (D.I. 13 at 18). The Court agrees with Plaintiff. Defendant's contentions "have been raised, in [some] way, as to other *Jumara* factors, and so the Court will not double-count them here." *Elm 3DS Innovations LLC v. SK Hynix Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015). Therefore, given that there is no apparent broader public benefit to this case proceeding in this Court versus the Middle District of Pennsylvania, this factor is neutral. *W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

### 9. Relative administrative difficulty due to court congestion

This factor is neutral.  The Court takes judicial notice of the most recent Judicial Caseload Profiles,[7] as of March 31, 2019, which indicate that, in the District of Delaware, the median length of time between filing and trial for civil cases is 32.3 months and the median length of time between filing and disposition in civil cases is 5.3 months.  In the Middle District of Pennsylvania, the median lengths of time in civil cases between filing and trial and filing and disposition are 34.9 months and 9.8 months, respectively.  The March 31, 2019 profile also indicates that there are 602 cases pending per judgeship in the District of Delaware, whereas there are 665 cases pending per judgeship in the Middle District of Pennsylvania.  These statistics counsel the Court that the two districts are similarly congested, and thus, this factor is neutral.

### 10. Local interest in deciding local controversies at home

This factor is neutral.  Plaintiff contends that "Delaware likely has a strong interest in deciding whether an out-of-state law enforcement officer can interfere with the operations of an already-regulated Delaware business."  (D.I. 13 at 18).  Defendant, for his part, asserts that Pennsylvania has a strong interest, given that Defendant acted on complaints received from Pennsylvania residents.  (*See* D.I. 11 at 17).  Given the competing interests of the two states, this factor is neutral.

### 11. Public policies of the fora

This factor is neutral.  Defendant argues that Pennsylvania has a greater public policy interest because Plaintiff's claims implicate Defendant's authority, as the Attorney General of Pennsylvania, "to investigate [Plaintiff's] lending practices *for their compliance with various*

---

[7]     The March 31, 2019 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf.

*provisions of Pennsylvania law* when dealing with Pennsylvania residents."  (D.I. 11 at 17 (emphasis in original)).  Moreover, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, is potentially implicated here, under which, the Attorney General of Pennsylvania is "authorized to take several specific types of action to protect the citizenry from unfair or deceptive business practices."  (*Id.* at 17 (citing *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 644 (Pa. Super. Ct. 1990)).  Plaintiff, for its part, contends that "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts."  (D.I. 13 at 17 (quoting *Realtime Data LLC v. Fortinet, Inc.*, No. 17-1635 (CFC), 2018 WL 5630587, at *8 (D. Del. Oct. 31, 2018)).  Given the competing public policies of the states, this factor is neutral.

        12.     Familiarity of the trial judge with the applicable state law in diversity cases

This factor weighs in favor of transfer.  Although Plaintiff argues that this factor is neutral because its claims arise under federal law, thus making Pennsylvania law irrelevant (*see* D.I. 13 at 16, 18), the Court disagrees.  As Defendant points out (*see* D.I. 11 at 18), application of substantive Pennsylvania law will be required to determine whether Defendant, as the Attorney General of Pennsylvania, has the authority to investigate out-of-state business entities as well as to enforce provisions of Pennsylvania law against contracts entered into between Pennsylvania residents and out-of-state business entities.  Given that a Pennsylvania court will have greater familiarity with the state law at issue than this Court, this factor weighs in favor of transfer.

        13.     Balancing the private and public factors

A balancing of the twelve *Jumara* factors advises the Court that this case should be transferred to the Middle District of Pennsylvania.  Six factors are neutral, one factor weighs against transfer, and five factors weigh in favor of transfer.  Though Plaintiff's choice of venue

has been given paramount consideration, the five factors that weigh in favor of transfer create a strong showing that this case is more appropriately decided in Pennsylvania. Specifically, the claims arose in Pennsylvania, any relevant third-party witnesses would be located in Pennsylvania, and a Pennsylvania court will have greater familiarity with the state law issues raised. Thus, the Court finds the balance of convenience to be sufficiently strong to overcome Plaintiff's choice of forum. For those reasons, Defendant's motion to transfer is granted.

IV.     **CONCLUSION**

For the foregoing reasons, the Court denies Defendant's motions to dismiss for lack of personal jurisdiction and subject matter jurisdiction and grants Defendant's motion to transfer this case to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). An appropriate order will issue.